UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROCK HOWARD GEROW,

    Plaintiff,

v.                                              Case No. 12-C-0080

MICHAEL J ASTRUE,

    Defendant.

**DECISION AND ORDER**

    This is an action for review of the final decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. 42 U.S.C. § 401 et seq. For the reasons stated in this opinion, the Commissioner's decision will be affirmed.

**BACKGROUND**

    Plaintiff Rock Gerow applied for DIB on April 1, 2008, alleging disability beginning on January 1, 2005, due to knee, back, and shoulder pain, depression, and shortness of breath. Gerow was denied benefits and subsequently requested a hearing before an administrative law judge (ALJ). A video hearing before the ALJ was held on April 9, 2010. Gerow appeared at the hearing without representation. The ALJ informed him of his right to representation at the hearing, which right Gerow knowingly waived. Gerow and a vocational expert (VE) testified at the hearing. Because of Gerow's previous lack of health insurance, there was little by way of medical records before the

ALJ. Regardless, the ALJ determined that Gerow had the following severe impairments: degenerative disc disease of the cervical spine, carpal tunnel syndrome, left shoulder tendinitis, bilateral osteoarthritis of the knees, polysubstance abuse (in remission), alcohol abuse (in reported remission), borderline intellectual functioning, and a depressive disorder. The ALJ found that Gerow's physical impairments, singly or in combination, did not meet the severity requirements listed in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

The ALJ also considered Gerow's mental impairments and concluded that his conditions, either singly or in combination, did not meet the criteria of listings 12.04, 12.05, or 12.09. However, the ALJ did find that Gerow had moderate difficulties in concentration, persistence, or pace. (Tr. 16.) It is not absolutely clear whether Gerow's difficulties in concentration, persistence, or pace stemmed either from his depressive disorder, his borderline intellectual functioning, or both, though it appears to primarily stem from Gerow's borderline intellectual functioning. (Tr. 18.)

The ALJ asked the VE, John Knoll—who had reviewed Gerow's file, exhibits, and work history, and listened to Gerow's testimony during the hearing—whether a hypothetical worker with the same age, education, and work experience as Gerow that is limited to performing simple, routine, repetitive light work with frequent kneeling and crawling, frequent bilateral handling, and occasional overhead reaching would be able to perform Gerow's past work or other work in the national economy. Mr. Knoll indicated that this hypothetical person would not be able to perform Gerow's past work as a floor layer, but would be able to find other work such as can conveyor feeder, decay control operator, roller operator, mill stenciler, and parking lot attendant. Mr. Knoll was not asked, as part of the hypothetical posed by the ALJ, whether a person having moderate difficulty with concentration, persistence, or pace would be able to perform these other jobs.

Based on Gerow's alleged symptoms of medical aliments, the ALJ determined that Gerow had a residual functional capacity (RFC) for a range of work that involves performing simple, routine, repetitive light work as defined in 20 C.F.R. § 404.1567(b), which includes frequent kneeling and crawling, frequent bilateral handling, and occasional overhead reaching. The ALJ rendered his decision on April 13, 2010, finding that Gerow had not engaged in substantial gainful activity since January 1, 2005 (step one); suffered from several severe physical and mental impairments (step two); did not have any impairments that met or equaled the listings (step three); could not perform his former job as a floor layer (step four); but could do other jobs and therefore was not disabled (step five). Gerow requested a review and on December 2, 2011, the Appeals Council denied his request making the ALJ's decision the final decision of the Commissioner.

**STANDARD OF REVIEW**

An ALJ's conclusion of no disability is reviewed with deference and will be upheld if it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court reviews the entire record but does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). An ALJ need not specifically address every piece of evidence, but must provide a "logical bridge" between the evidence and her conclusions. *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citing *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)). An ALJ must also "confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir.

2003). An ALJ's credibility determination is entitled to special deference because the ALJ has the opportunity to observe the claimant testifying. *Castile v. Astrue*, 617 F.3d 923, 928-29 (7th Cir. 2010). Accordingly, credibility determinations are reversed only if they are patently wrong. *Id.* The ALJ is also expected to follow the Agency's own rulings and regulations in making his determination. Failure to do so, unless the error is harmless, also requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006).

**ANALYSIS**

Gerow provides a litany of challenges to the ALJ's conclusions.[1] The principal ground for challenging the ALJ's decision that has some merit is the fact that the ALJ did not explicitly include the limitation of Gerow's moderate difficulty with concentration, persistence, and pace into his hypothetical to the VE during the hearing or into his RFC finding, which the Commissioner acknowledges in his brief. (Def. Br. in Opp'n 8.) The ALJ in his assessment of whether Gerow had a severe mental limitation equal to the criteria of listings 12.04, 12.05, or 12.09, noted that Gerow did have a moderate limitation of concentration, persistence, or pace. The Commissioner asserts that this omission of concentration, persistence, or pace in his RFC finding or hypothetical does not warrant remand because the ALJ's RFC limitation to simple, routine, and repetitive light work adequately accounted for Gerow's moderate mental limitation.

---

[1] Gerow submitted with his complaint seven exhibits, two of which consist of new evidence that post-date the ALJ's decision. (Compl. Exs. 3 & 7.) The first item of evidence is a letter from Dr. Elkins dated October 21, 2011. The second item of evidence is a psychological report by Dr. Kaplan dated January 16, 2012. Gerow does not make any specific request for a sentence six remand, nor has Gerow offered any arguments why the new evidence warrants such a remand. *See Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003). Therefore, I consider these potential arguments for a sentence six remand waived and will not consider the new evidence submitted with Gerow's complaint. *See Apple, Inc. v. Motorola Mobility, Inc.*, __ F. Supp. 2d __, 2012 WL 3289835, at *14 (W.D. Wis. Aug. 10, 2012).

The ALJ, in his discussion of Gerow's mental limitations outlining his RFC finding, considered the consultative examinations of Dr. Steven Krawiec and Dr. William Camp. (Tr. 18.) Dr. Camp's opinion primarily concerned the effect of Gerow's reported alcohol use and past substance use. Of particular relevance to the issue of Gerow's limitation on concentration, persistence, and pace, Dr. Krawiec indicated in his opinion that Gerow's IQ scores evidenced a borderline range of intellectual functioning, and that his "best chance of success would be with simple, redundant tasks in a low-stress environment where rapid pace was not required." (Tr. 201.) The Commissioner asserts that because the ALJ's limitation of Gerow's RFC to simple, routine, and repetitive work was supported by Dr. Krawiec's opinion, the ALJ effectively "excluded those tasks that someone with the claimaint's limitations would be unable to perform." *See O'Conner-Spinner*, 627 F.3d at 619. In other words, the ALJ's assessment of Gerow's RFC excluded work that would be beyond the capabilities of someone with moderate difficulty with concentration, persistence, or pace.

The ALJ also supported his RFC finding with the mental RFC conclusions reached by Dr. Edelman.[2] Gerow argues that I should not consider Dr. Edelman's MRFCA conclusions because the ALJ did not specifically discuss his opinion. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). However, given that the ALJ did reference Dr. Edelman's MRFCA conclusion in support of his RFC finding (Tr. 19), Gerow's contention that the report should not be considered is without merit. *Chenery* holds that it is improper to uphold an administrative agency decision on grounds not relied upon by the agency; it does not stand for the proposition that, in deciding whether substantial

---

[2] The ALJ acknowledged that while the opinions of non-examining physicians are, as a general matter, not entitled to as much weight as the opinions of treating physicians, they do deserve some weight, "particularly in a case like this in which there exist a number of reasons to reach similar conclusions . . . ." (Tr. 19.)

evidence supports the agency's findings, a reviewing court is limited to only the evidence that was explicitly cited by the agency as support for its finding. *See id.*; *see also Estok*, 152 F.3d at 638 (stating that on appeal, the court "reviews the entire record" and its review "focuses . . . on whether the ALJ's findings were supported by substantial evidence"). Such a rule would be unreasonable since it would require the ALJ to include in his decision a discussion of all of the evidence supporting every finding he made, thereby substantially lengthening the ALJ's written decisions and slowing the administrative process. The record reveals that Dr. Edelman concluded in his MRFCA that, despite Gerow's borderline intelligence functioning, he had no problems with attention or concentration. (Tr. 271.) Dr. Edelman did not find that Gerow's borderline intelligence functioning affected his persistence or pace and ultimately concluded that he "is capable of performing the basic mental demands of unskilled work." (*Id.*) Unskilled work reasonably comprises simple, routine, and repetitive tasks as construed by the Social Security Act. *See* 20 C.F.R. § 404.1568(a); *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950, at *4 (6th Cir. Aug. 30, 2000) ("We believe that the ALJ's qualification that [claimant] was limited to simple, repetitive, and routine tasks, within the category of light work, simply means that [claimant] is limited to unskilled light work.").

Based on the mental health assessments of Drs. Krawiec, Camp, and Edelman, the ALJ's RFC limitation to simple, routine, and repetitive work adequately accommodated for Gerow's mental limitations in concentration. Even though Dr. Krawiec does note his belief that Gerow would most likely find success in "a low-stress environment where rapid pace was not required," this should not be read too broadly to conclude that Gerow was not capable of working in this type of environment. Furthermore, the conclusions of Drs. Camp and Edelman support this finding. The record adequately supports the ALJ's mental RFC finding, limiting Gerow to simple, routine, and repetitive work, because the medical records illustrated that Gerow's borderline intellectual

functioning was the reason for the limitation. There is nothing in the record indicating that Gerow's borderline intellectual functioning or depression affected his pace or persistence and consequently his ability to perform simple, routine, and repetitive unskilled work.

Nevertheless, Gerow argues that the ALJ's omission of any discussion of his moderate limitation on concentration, persistence, or pace into his RFC finding and hypothetical to the VE during the hearing requires remand. The Seventh Circuit, in *O'Conner-Spinner* outlined that while "there may be instances where a lapse on the part of the ALJ in framing the hypothetical will not result in a remand. . . . for most cases, the ALJ should refer expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *Id.* at 620-21. In *O'Conner-Spinner*, the court determined that the ALJ's hypothetical worker, who was confined to routine, repetitive tasks, did not supply the VE with adequate information to determine whether the claimant who, like Gerow here, had a moderate limitation on concentration, persistence, and pace, could perform other jobs.

"Among the limitations the VE must consider are deficiencies of concentration, persistence and pace." *Id.* at 619 (citing *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). However, there is no per se requirement that the terminology, "concentration, persistence, and pace," must be posed in the ALJ's hypothetical in all cases. *Id.* An exception to this rule applies in situations where "a VE's familiarity with a claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations," the VE's familiarity with the claimant's limitation may be assumed. *Id.* The key determination is whether the limitations noted by the ALJ in his opinion "were incorporated in the hypothetical he posed to the vocational expert." *Kasarsky*, 335 F.3d at 544.

It is evident that the VE did review Gerow's medical and work history and was present at the hearing before the ALJ. However, the above described exception cannot apply if the record indicates "that the VE's testimony was confined to the limitations set forth in the ALJ's hypothetical question." *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). Thus, if the record does not illustrate that the VE took into account the limitation on concentration, persistence, and pace in the ALJ's hypothetical question, despite the ALJ's omission of the specific mental limitation, then the exception cannot apply. Like the VE's testimony in *Simila*, Knoll did not indicate that he considered anything other than the ALJ's hypotheticals. (Tr. 70-74.) Nor did Knoll, in his responses, rely on his review of the record or Gerow's testimony. (*Id.*)

Upon a closer examination of the colloquy between the ALJ and Knoll, it is evident that the ALJ alerted Knoll to Gerow's physical and mental limitations. First, the ALJ limited the hypothetical worker to someone with the same age, education, and work experience as Gerow with the further limitation of frequent kneeling and crawling and occasional overhead reaching. (Tr. 70.) These limitations without doubt account for Gerow's physical RFC. Second, the ALJ further added to the hypothetical the restriction of the work to those that are limited to simple, routine, and repetitive tasks. (Tr. 72.) Thus, the ALJ's further limitation on the scope of the complexity of tasks to his hypothetical worker implicitly accounted for Gerow's mental impairments and alerted Knoll to these limitations.

The facts of this case are distinguishable from those in *O'Conner-Spinner*, where the claimant suffered from depression and the state examiner's RFC determination "explicitly noted that there were at least moderate limitations" on concentration, persistence, and pace stemming from the claimant's depression. 627 F.3d at 620. In contrast here, the state's examiners noted that although there were some moderate limitations on Gerow's concentration stemming from his

borderline intelligence functioning, he was capable of performing simple, routine, and repetitive unskilled work. And though he might be more successful in a low-stress environment that did not require rapid pace, he was still capable of performing this type of light work. In addition, there is a conspicuous absence in the record of any connection between Gerow's self-reported depression and his ability to concentrate, persist, or pace. Indeed, the ALJ highlighted the fact that there were no medical records of depression, Gerow did not take any medications for depression, nor had he ever sought treatment for depression. (Tr. 18.)

The facts of this case are also distinguishable from *Kasarsky*. There, the claimant had severe limitations from borderline intelligence functioning due to affective disorders, mental retardation, and autism. *Kasarsky*, 335 F.3d at 543. Although the ALJ did include in his RFC finding the limitation of the claimant's borderline intelligence, he did not include the additional limitation that the claimant had frequent deficiencies of concentration, persistence, and pace. *Id.* The Seventh Circuit reversed because the hypothetical to the VE was insufficient. The court explained that the ability of someone with borderline intelligence to learn a job was not the same as the ability of that person to perform consistently once trained. *Id.* at 544. By way of contrast here, the ALJ determined in his RFC finding that though Gerow had some limitations in short-term memory, he did not display "significant problems with attention or concentration." (Tr. 18.) Thus, the ALJ concluded that Gerow had "adequate capacity to manage simple job instructions." (*Id.*) The ALJ's restriction of Gerow's mental RFC to performing simple, routine, and repetitive light work reasonably accommodated his moderate limitation on concentration. Therefore, I conclude that the ALJ in his mental RFC finding and in his hypothetical question to the VE adequately accounted for Gerow's mental limitations when he limited Gerow's RFC to performing simple, routine, and repetitive light work.

Gerow also lists a spate of arguments that the ALJ erred in his physical RFC assessment by not considering all his physical limitations. In particular, he contends that the ALJ did not address how long he could sit, stand, or walk, whether he needed an assist device to ambulate, or his ability to use vibrating tools. The ALJ's findings as to the length of time Gerow could sit, stand or walk, however, are implicit in his finding that Gerow retained the ability to perform light work subject to the limitations he listed. And while Gerow may have used a cane on some occasions, the medical record is bereft of any indication that one was prescribed by any doctor for his general use because of a physical limitation caused by an impairment. The issue is not whether he used a cane, but whether a cane was medically indicated. Finally, the ALJ's failure to include in his hypothetical a limitation on the use of vibrating tools, to the extent the evidence supports such a limitation, was harmless, as even Gerow seems to concede (Reply at 5), since several of the job categories that the VE testified he could perform did not require use of such tools.

Gerow also contends that the ALJ erred in rejecting the opinion of Dr. Elkins, his treating physician. Dr. Elkins saw Gerow to treat his complaints of chronic headaches. In a letter dated August 21, 2009 to the SSA, Dr. Elkins stated that he had seen Gerow over the past several months for his chronic headaches due to a fall resulting in "chronic pain syndrome." Dr. Elkins explained that it "would be my hope that with some short-term disability his condition could be assessed and treated with the goal of returning back to work." (Tr. 299.) The ALJ correctly rejected Elkins' opinion for two reasons: 1) his opinion embraced the ultimate decision of disability, which is reserved for the Commissioner, and 2) Elkins' treatment of Gerow regarded his headaches rather than the physical and mental limitations listed in his application for disability benefits. *See Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1989); 20 C.F.R. § 404.1527(e)(1).

Finally, Gerow asserts that the ALJ erred in his assessment of Gerow's credibility. Though Gerow criticizes the ALJ for using "meaningless boilerplate" language in his initial credibility assessment, he acknowledges that the ALJ outlined several other reasons for his assessment. Gerow criticizes three of the reasons that the ALJ gave for his finding that Gerow's testimony was less than credible: 1) the ALJ failed to consider additional medical evidence presented, 2) the ALJ mischaracterized Gerow's ability to do recreational and daily activities, and 3) the ALJ erred in disbelieving Gerow's testimony that he was illiterate.

The additional evidence refers to various papers that Gerow brought with him to the video hearing. These medical papers concerned his carpal tunnel syndrome. The ALJ was not able to review the records because the hearing was conducted via video conference, but the ALJ did request the records be sent and advised Gerow that he would keep the record open. Based on the record transcript, it does not appear that these medical records Gerow brought to the hearing were ever sent. The ALJ, in his decision, noted that Gerow suffered from a severe limitation due to carpal tunnel, but that this limitation did not meet a listing. In addition, during the hearing Gerow testified that he had had surgery for his carpal tunnel syndrome, and that it seemed to be going away. (Tr. 38.) Based on the limited medical record of carpal tunnel syndrome that was before the ALJ, he reasonably accounted for Gerow's physical limitation in his RFC finding.

Gerow contends that the ALJ erred in his credibility assessment in disbelieving his claim of illiteracy. The ALJ did not find Gerow's testimony on this point credible because he could read blueprints, was a master mechanic, and was able to run his own business for many years. It is reasonable that the ALJ found Gerow less than credible on the extent of his literacy skills. The ALJ also reasonably accounted for Gerow's limited literacy skills in his mental RFC finding by limiting

him to simple, routine, and repetitive unskilled work that only requires managing simple job instructions.

The ALJ further found that Gerow's reported severity of his symptoms were not credible based on Gerow's reported daily and recreational activities. Gerow reported that his hobbies were fishing, hunting, and riding his motorcycle. He indicated that he fishes about five to ten times a year. He also hunts, although he had not been able to the previous year because he could not afford the cost of a license. Importantly, Gerow did not explain to the ALJ that he could not hunt due to his neck, shoulder, or knee pains, but rather explained he could not hunt the previous year only because of limited financial resources. Gerow also testified that he did routine household chores and projects, including painting, excavating, and building a retaining wall, went grocery shopping, and maintained social contacts. (Tr. 44, 47, 58-59.) These daily and recreational activities reasonably undermined Gerow's credibility in regard to the severity of his limitations and his ability to perform simple, routine, and repetitive light work. I do not find, based on a review of the record, that the ALJ's credibility assessment was "patently wrong." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

Based on the foregoing, the decision of the Commissioner is **AFFIRMED**.

**SO ORDERED** this   15th   day of January, 2013.

                                                   s/ William C. Griesbach
                                                  William C. Griesbach, Chief Judge
                                                  United States District Court